May it please the court. My name is Richard Oney. I represent myself and my wife, Erin Cox Oney. We're the appellants in this case. Before addressing the bankruptcy court's orders and errors of law in this case, I think it's important to summarize some of the facts that are not in dispute in this case. First, it's not in dispute that a decade ago, Steven Weinberg retroactively terminated my employment with his firm, Weinberg Legal Group, and caused the firm to withhold my wages in bad faith and in violation of Arizona wage statutes. Second, as a result of that conduct, in September of 2000, the Oneys became a creditor of Weinberg Legal Group for an amount over $200,000. The Oneys filed a suit in Superior Court, and while that suit was pending, it's undisputed that Weinberg Legal Group became insolvent. The bankruptcy court determined that date of insolvency to be November 1, 2001. It's uncontroverted that under the Arizona Trust Fund doctrine, the Weinbergs then became fiduciaries of the corporate assets and held those assets in trust for the benefit of the creditors, including the Oneys. It's also the other.  You're familiar, counsel, with all of that, and you were provided with some relief by the bankruptcy court, and the bankruptcy appellate panel put its stamp of approval on it. What are you here to argue about today? I'm here to argue essentially three points as set forth in my brief. First, the bankruptcy court committed error by not including as preferential transfers the $36,000 of payments that the Weinbergs made to their personal creditors. Now, the court found that those were payments essentially winding up the business, did it not? In other words, in what way were the findings infirmed that the bankruptcy court made with regard to the 38,000, I think it was 38,000, roughly? The court held that the payments were for either reasonable compensation or that they were for reimbursement of expenses. But under the Teeter's case, which is the controlling case under Arizona law, that doesn't matter. You don't contend, well, would it matter? Reasonable compensation is your position, would not be something available to the Weinbergs in this context? The Weinbergs would get a pro-rate, a percentage of their reasonable compensation, but not the entire thing. Would it be the same 9.2 percent? Correct, correct. Under the bankruptcy court's calculation, you use that 9.2 percent if you are going to include in the pro-rate of calculation the debts of the bank and the landlord that the corporation owed. But that's if they found that the Weinbergs were in the status of just another creditor, in essence, wouldn't it? Yes. If the Weinbergs carried their burden of proof to show that, in fact, they were a legitimate creditor, they would get 9 percent. And I also would point out to the Court that my claim was a wage claim. So there's no issue here of they're just both unsecured claims. There's no issue of some sort of wage priority or anything like that that relates to one person as another. Well, but as I understand it, we're really talking about payments between October 2001, December 2001? Correct. And you were not a employee then, were you? Excuse me. We're talking about payments from the insolvency date, which is November of 2001 to December of 2002, is actually the period during which Weinbergs took the case. And you were an employee when? I was an employee up till September 1 of 2000. I was terminated on that. So at the point we're really talking about here, we're really talking about not a period in which you were an employee, correct? Correct. Correct. So if that were the case, and these were just for not, I mean, they weren't necessarily payments. There were some payments for reasonable compensation for their continued service to the corporation while they were winding up. I understand that. And other payments made for legitimate creditors, correct, or what the bankruptcy court called legitimate WLG creditors, because they were? Well, there were payments made to a number of the creditors. There were $230,000 in payments made to the bank, for example. Well, I'm not talking about all the creditors. I'm talking about why were the payments made to these people, one group or one part of it that bankruptcy court said because they were legitimate WLG creditors. And another part of the payment is because they were in fact compensated for their continued service to wind up the corporation, correct? So if in fact you were similar to them, you were only similar to the payments made out because they were creditors. Yes, as I was a creditor. And let me talk a little bit about the burden of proof in this case, too. The bankruptcy court imposed the burden of proof on me after determining that the beneficiaries imposed the burden of proof on me to show that the Weinberg use of trust funds was improper. That was that was error under the Teeters case. Well, I guess Teeters is for sure the idea that one, a creditor can sue. But it seems to me as well that the Teeters case doesn't just say a creditor can sue under a trust fund theory, but that one must sue under the trust fund theory on the benefit of all creditors. No, Teeters, Your Honor, Teeters actually said that it was not deciding that case. And in fact, my suit by December of 2000. Now, what does Teeters 836p2 at 1043 note 1 say? It seems to me that that is pretty clear, that what they're suggesting is that a creditor cannot sue under the trust fund theory without bringing the action for the benefit of all the creditors. No, Your Honor. What the court of appeals said in that case was that it was specifically not addressing that issue and did not need to address that issue because the issue was never raised at trial or on appeal by the parties. That's the same as this case. That issue has never been raised by the Weinbergs in the 10 years of litigation that we've been going through here. Could I ask one other question with regard to the second block of money at issue, if you will? Why should you, I realize there are ineligible creditors that are not going to be able to recover their proportional share of that, the $43,000-plus, and you certainly object to the Weinbergs, then, by default, receiving it. Why should you receive that? I should receive it because the policy behind the trust fund doctrine and the – and specifically stated in the Teeters case is that the fiduciaries are prohibited from keeping more than their pro rata share. And my limitation is that I cannot recover under the Teeters case, I cannot recover more from the Weinbergs than they actually received, which I have never sought to do under the trust fund theory. So the policy question is this. If you are going to include the bank and the landlord debt, when they've been discharged in bankruptcy, by the way, if you're going to include them in the calculation as between the unfaithful trustee and the beneficiary who's the victim of the faithlessness, who should get that money? I think the reading of Teeters supports a conclusion that I should get it. And also I would point out that this Court's decision in Otto v. Niles, which evaluates policies underlying the non-dischargeability statutes in bankruptcy law and fiduciary duty, suggests the same thing. Well, my worry here, I guess, Counselor, is that one might say that the standard used here in determining this was imprecise. One might also suggest that there was a wrong standard about transferred with wrongful intent. But the bottom line is, applying the trust fund doctrine and applying the test did transfer prefer a corporation's owners over other creditors, which I think is the test, is, in fact, what the bankruptcy court did here or what the court did here. Is it really such that I can say on an abuse of discretion basis, harmless error at best, given the standard of review? I think that this is de novo review because there's no dispute as to the law. There's no dispute as to the facts in terms of the transfers that were made. So the question is just whether the court properly applied the law. And in this case, because the court just flat did not count payments made to third parties for the benefit of the Weinbergs, that's legal error. I'm not a question. Roberts, you've run out of time. Yes. But we'll give you a minute for rebuttal. Okay. Thank you, Your Honor. And let me alert counsel that are in the room that when the light turns red, that means you're out of time. We permit you to finish the sentence or the point that you're making. But as the time rolls up in the red, it doesn't mean we've automatically given you extra time. Counsel? Good morning again, Your Honors. May it please the Court. My name is Michael Carmel. I represent Mr. and Mrs. Weinberg of the Eppolese. I'd like to focus on some of the questions that were asked of Mr. Oney. The bankruptcy court, as it's clear that you know, found that there were about $43,000 in transfers that were inappropriate, that were part of the trust fund doctrine. The $38,000 about which Mr. Oney complains in at the end of the day in his reply brief, which is down from $399,000 in the trial and $63,000 in his expert. But this remaining $38,000 were found by the bankruptcy court at the end of the day to be legitimate business expenses. Wasn't a little over $5,000 of that for Weinberg's personal bankruptcy? Well, no. Why don't you start with a yes or no, and if you need to explain, do it. No. No, it was not. Jabergen-Wilk, the law firm that you're asking about, and that $5,000 payment, the testimony at trial was that Jabergen-Wilk also did collection work for the law firm, and the testimony at trial was that that $5,000 payment was for collection work that the law firm – on behalf of the law firm. The testimony, and there's documents, part of the record, that Jabergen-Wilk was paid $2,500, I think the date was September 4th, 2002, by Mr. Weinberg's personal account. There's a subsequent $2,500 payment at the end of December 2002 from Weinberg Legal Group. The testimony and the evidence is that that was for payment for additional work that that law firm did on behalf of the WLG law firm. That's the evidence that was before the judge. The – the – the – Sotomayor, I don't know if you want to comment on this, but I think it's important to note that the trial court did not make any specific findings about the expenses for the automobile, the credit cards, the taxes. Right. What specific findings did the bankruptcy of the trial court make with regard to those in relation to their being part of winding up WLG? The Court determined in the – in the minute entry order from 2007 that those were legitimate business expenses. And in the trial, in closing argument, Mr. Oney conceded in questions to the Court that legitimate business expenses were not part of the equation. There was specific dialogue between the judge and Mr. Oney on that. Those – that – the transcript of that portion of the thing was not included in Mr. Oney's excerpts of record. We have it in our excerpts of record. And if you need the specific pages, it's between 172 and 176 of the July 2007 transcript. Those specific pages were not included in the appellant's excerpt of record. We have it in ours. So there was that dialogue. And the bankruptcy court made factual findings that – that those were legitimate business expenses, based on testimony by Mr. Weinberg, which is part of our excerpts of record. So I think that it's – there's more than sufficient evidence to support the Court's findings. Is Mr. Oney correct that the bankruptcy trial court placed the burden on him? No. Here's – here's where it is. The burden shifts. Initially, Mr. Oney, under Teeters, has the burden to establish that there is a fiduciary relationship. You do that by establishing insolvency. Once Mr. Oney also has the burden – has the burden to establish that there were transfers made post-insolvency, the date for this record is November 1, 2001. At that point, under Niles, the burden shifts to Mr. Weinberg to be able to adequately account for or explain those transfers. And as I've indicated, there's more than an abundant amount of evidence. The burden then shifts back to Mr. Oney on the pro rata shares. That's under Teeters. And in the only reference to a burden in the Court's minute entry of July 2007 addresses that last component, that – the percentage preference issue. And in fact, in Teeters, the court of appeals reversed the trial court's ruling because Kodak, the creditor in that case, did not present any evidence on what the appropriate proportion share was. So that was the burden on Mr. Oney. So there's a shifting burden, but at the end of the day, the court properly, I think, assessed the burden between the parties. So your position is, A, there's adequate factual findings to support the bankruptcy court's conclusions with regard to this approximately $38,000. That's one. Yes. And two, that burden and burden shifting was handled appropriately. Yes, Your Honor. And so that you can drill into and focus on the specific testimony, in our tab 44 of the 20 pages of testimony with Mr. Weinberg, it's ER roughly 990 to 1010. And there's – in his direct testimony, there's the explanations there. And so those are some very precise examples of the evidence that was presented to the Court. Any change? Oh, I'm sorry. I'm sorry. No, no. No, no. You go right ahead. I just wanted to shift for a moment, before we do run out of time, to the other block of money, the one that the $43,484 that is at issue. Yes, Your Honor. Mr. Oney makes the argument that it's not fair, equitable, appropriate. There's no law that would support the balance of that money going to the fiduciary who had breached the Arizona Trust doctrine. What basis do you put forth as to why the Court acted appropriately in basically by default giving the balance to Mr. Weinberg, who had a proportionate 9.2 percent share? We part company on that. And this kind of goes to Judge Smith's comment about footnote 1 and teeters. The basis of footnote 1 is the reference that it's a proportionate distribution to all creditors. That's the language. And in a subsequent case, the Whitacombe-Dawson case, that court took the word all and emphasized it themselves in that opinion. And it's the question is, who is the harm to? The harm is not to Mr. Oney. He gets what he's entitled to, his 60.7 percent. That's what the law is. The fact that other creditors chose not to pursue the kind of claims that Mr. Oney chose to pursue is not, does not entitle him to get a windfall. And the BAP, in fact, in its footnote, said, you know, he doesn't have standing to pursue those claims. So that's my, I hope I've responded to your question, Judge Probert. And that, as I understand it, which that is what I was trying to get to with Mr. Oney, that, frankly, with teeters, the footnote 1, coupled with Dawson versus Whitacombe, that, in fact, creditors then, what other other creditors they are, they're entitled then to their proportional share as long as Mr. Oney gets his proportional share. That's all there is left to it. That's correct. Your Honor, there's a couple minutes left. I don't need to take more time, unless you want to hear anything about the prejudgment interest issue in the otherwise I would rest on the arguments that we made in our brief. I think that it's, you've been sufficiently briefed on that. Thank you very much. Roberts. I don't see any other questions. Thank you for coming in today, counsel. Thank you, Judge. Mr. Oney, rebuttal, one minute. Your Honor, the bankruptcy court did not make the type of burden-shifting analysis that Mr. Carmel just referred to. And if you read the citation that they put in their brief, from the outset, the bankruptcy court imposed upon me the burden to show that the transfers were preferences, and that's in violation of teeters. With respect to Mr. Weinberg's discussions about Jayberg and Wilk, I would cite the court, these may have been included in the pages Mr. Carmel cited, but I would cite the court to pages 997, 98, and 99 of the record, which you're talking 997? Correct. Correct. He cited us to 990 to 1010. Okay. Would that cover it? Yes. So within that portion of the record, you will see that I asked Mr. Weinberg about the legal bills, and he admitted that he could not produce the legal bills.  You're out of time. I'm out of time. Thank you, Your Honor. Thank you. Thank both counsel for coming in today. The case just argued will be submitted for decision.
judges: Pro, Hawkins, Smith N. R.